COOK │ ROOS │ WILBUR │ THOMPSON LLP
SUSAN H. ROOS, CBN 107278
MICHAEL E. WILBUR, CBN 152361
KRISTINA H. SHUTE, CBN 221439
221 Main Street, Suite 1600
San Francisco, California 94105
Telephone:    415-362-7071
Facsimile:    415-362-7073

Attorneys for Plaintiff
JLT AEROSPACE (NORTH AMERICA), INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JLT AEROSPACE (NORTH AMERICA), INC., a corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CLAUDIA ROCKSETH-SHIPMAN, an individual<br><br>　　　　　　　Defendant. | Case No.:<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Breach of Contract<br>2. Breach of Fiduciary Duty of Loyalty<br>3. Breach of Covenant of Good Faith and Fair Dealing<br>4. Intentional Interference with Prospective Economic Advantage<br>5. Intentional Interference with Contract<br>6. Breach of Confidential Relationship<br>7. Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030<br>8. Violation of California Penal Code § 502<br>9. Unfair Competition – Violation of California Business & Professions Code §§ 17200 et seq. |

## **PARTIES**

1.　　Plaintiff JLT Aerospace, Inc. ("JLT") is now, and at all times mentioned herein was, a corporation incorporated in the State of Delaware and having its principal place of business in the State of Virginia, and which is engaged in the business of aviation insurance and reinsurance throughout the United States.

2. Claudia Rockseth-Shipman ("Shipman") is an individual who Plaintiff is informed and believes presently resides in the city of Napa in the State of California.

## JURISDICTION

3. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 in that this action states a federal question arising under the laws of the United States, specifically violation of the Computer Fraud And Abuse Act, 18 U.S.C. § 1030. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. The Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that it is an action between citizens of different states, and the matter in controversy, exclusive of costs and interest, exceeds the sum or value of $75,000.

## VENUE

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) because the defendant resides in the State of California and in the Northern District of California.

6. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions on which the claim is based occurred in and/or a substantial part of the property that is the subject of this action is located in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

7. Assignment of this case to the Court's San Francisco Division is proper because a substantial part of the events that give rise to this action occurred in one or more of the counties within this Court's San Francisco Division, and a substantial part of the property that is the subject of this case is situated in one or more of the counties to this Court's San Francisco Division.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. On June 6, 2004, JLT hired Shipman as a Senior Vice President for its Seattle office.

9. Shipman secured her employment as a Senior Vice President with JLT as part of a business transaction between JLT and Shipman's longtime colleague, Donald Bingham ("Bingham"), whereby Bingham sold his entire then-existing book of aviation insurance business to JLT for the gross sum of $3,000,000.

10. At the time that he sold his book of aviation insurance business to JLT, Bingham's book of business was comprised of fourteen (14) accounts, namely, Skywest, Inc., Hageland Aviation Services, 40 Foxtrot LLC, T34B LLC, Alaska Central Express, Inc, Alpine Aviation, Inc., Eric Christensen, GJR Leasing, Inc., Peninsula Airways, Inc., Reebaire Aircraft, Inc., Regional Paramedic Services, Security Aviation, Inc., Diamond Flying, LLC, and Fly 4 you, Inc.

11. JLT purchased Bingham's book of aviation insurance business with the intention of maintaining and growing these accounts over time and using that business base to attract additional clients.

12. To that end, JLT also agreed to employ Bingham and certain of his former employees, including Shipman. Specifically, JLT hired Bingham as an Executive Vice President and Shipman as a Senior Vice President.

13. Principally through the hire of Bingham and Shipman and the purchase of Bingham's prior book of business, JLT created its Seattle regional office, and placed Bingham in charge of that office.

14. Following her hire with JLT as a Senior Vice President, Shipman worked from the Seattle office and reported directly to Bingham.

15. As a Senior Vice President for JLT, Shipman supervised a staff of approximately four (4) people, and, together with Bingham, was responsible for the day-to-day servicing and management of the fourteen (14) accounts that JLT had purchased from Bingham, and for doing so for the sole and exclusive benefit of JLT.

16. In or about August 2006, at Shipman's request, JLT permitted Shipman to relocate to California and telecommute to the Seattle office. Shipman continued to support the Seattle office from her home in California until she resigned on or about July 30, 2007.

17. As a condition to her hire with JLT, Shipman (then known as Claudia Rockseth) executed an Employee Handbook Acknowledgment Agreement with JLT ("the Agreement"), whereby she agreed to comply with, and abide by, certain rules, guidelines and procedures. These included, among others, that: (1) all non-public information about JLT and/or its customers be treated as confidential and/or proprietary and not be disclosed, photocopied, duplicated, or revealed in any

form to anyone outside of JLT or for any purpose other than JLT's sole and exclusive benefit; (2) all non-public information obtained as a result of employment with JLT and/or contact with its customers be considered to be, and treated as confidential and/or proprietary and only be used in course of performing regular responsibilities on behalf of, and for the sole and exclusive benefit of, JLT; and (3) otherwise avoid putting herself into a position where her personal interests do, or reasonably could, conflict with her duties and responsibilities to JLT.

18. Shipman, at the direction of and together with Bingham, was generally responsible for protecting, preserving and growing JLT's aviation insurance business base. More specifically, Shipman's principal responsibilities included servicing, maintaining and growing the fourteen (14) accounts that comprised the book of business that JLT purchased from Bingham.

19. Shipman also was responsible for: becoming knowledgeable of all aspects of JLT's aviation insurance business and related services, including pricing structures and rates, profit margins, and product offerings; maintaining and promoting JLT's goodwill; and converting that goodwill into a renewal of customers' aviation insurance policies on favorable terms with the assistance of JLT's national and international operations and marketing support.

20. With rare exception, Shipman and Bingham were the sole and exclusive JLT representatives with whom the customers of the Seattle office dealt.

21. The fourteen (14) accounts that JLT previously purchased from Bingham, and that Shipman, together with Bingham, was responsible for servicing, maintaining and growing on JLT's behalf, generated gross annual revenue exceeding $2.5 million.

22. As part of her training, and in the regular performance of her duties on behalf of JLT, Shipman had regular and in-depth access to JLT's confidential information pertaining to, without limitation, JLT's services and products, customers, customer lists, policy details and rates, sales leads, customer requirements, potential customer requirements, business methods, pricing, product/service development plans, finances, marketing strategies, and other confidential information (collectively, "Confidential Information").

23. The Confidential Information made available to and regularly used by Shipman provides her with an invaluable competitive advantage over JLT in the aviation insurance and

reinsurance business. JLT's Confidential Information is of great value to JLT, and would benefit any competitor in that such information would, among other things: disclose the identity, contact information and insurance practices and needs of existing customers; eliminate the need, expense, and time for conducting independent research and investigation into the customer's needs and requirements; and disclose confidential and competitively sensitive information regarding, among other things, client insurance renewal dates, types and levels of coverage, and payment and claims histories; and JLT's pricing, marketing strategies, and finances, among other things. None of this Confidential Information is generally known to JLT's competitors.

24. Shipman was allowed to use JLT's good name to establish and develop personal and business relationships with the customers and prospective customers of JLT throughout the aviation insurance industry. In addition, Shipman was given access to existing relationships between JLT and certain of its customers, and was specifically tasked with responsibilities for preserving and further developing these relationships.

25. The personal and business relationships developed by Shipman with JLT customers and prospective customers during her employment with JLT, and Shipman's knowledge of JLT's customers and prospective customers, give Shipman an invaluable competitive advantage over JLT.

26. The customer contacts given to Shipman and developed by Shipman for JLT enable Shipman unfairly to take for herself many of JLT's customers and prospective customers.

27. JLT is informed and believes that beginning in or about June or July 2007, while still employed by JLT, Shipman began (i) negotiating for employment with at least one of JLT's competitors, Marsh USA, Inc. ("Marsh"), and (ii) alone or with others, soliciting, encouraging or otherwise influencing and/or attempting to influence JLT customers to move their business from JLT to Marsh.

28. On or about July 17, 2007, while still employed by JLT and telecommuting from her residence in California, Shipman, on her own and/or acting as an agent of Bingham and/or Marsh, accessed JLT's Seattle, Washington computer network and electronically diverted Confidential Information regarding certain JLT clients, including without limitation, Skywest Airlines, Inc., Peninsula Airways, and Fly 4 You, Inc., to her personal electronic mail address. This Confidential

Information included without limitation, policies, schedules of aircraft, premium calculations and related email, premium and rate information, schedules of insurers, and fees charged by JLT.

29. JLT is informed and believes that subsequent to the events set forth in paragraph 28, Shipman disclosed the confidential and/or proprietary information she accessed from JLT's computer network and diverted to her personal electronic mail address to Marsh, and/or used it in Marsh's behalf. JLT is further informed and believes that Shipman attempted to cover her unlawful appropriation of JLT's confidential and/or proprietary information by deleting the corresponding electronic mail traffic.

30. The day immediately following Shipman's activities described at paragraphs 28 and 29 above, Skywest requested a CD-ROM of its policy information, taking the first step consistent with the termination of its relationship with JLT.

31. On July 25, 2007, still unaware of her unauthorized access and appropriation of confidential and/or proprietary information, JLT notified Shipman that it would not allow her to continue to telecommute from California as an employee of JLT, and that her employment with JLT would terminate within the next twelve (12) months, but that JLT would provide her an opportunity to transition to a consulting relationship with JLT.

32. On July 30, 2007, Shipman suddenly submitted her resignation and immediately or soon thereafter commenced employment with Marsh.

33. JLT is informed and believes that Shipman, alone or in concert with others, disclosed all, or portions of JLT's Confidential Information to Marsh and used JLT's Confidential Information to unlawfully compete for JLT's customers and successfully and unlawfully divert them from JLT to Marsh.

34. JLT is informed and believes that beginning in or about August 2007, Shipman made untruthful statements to JLT clients for the purpose of diverting their business from JLT. These misrepresentations included, for example, statements to the effect that JLT would soon eliminate, or be unable to continue, its operations in the Seattle area.

35. On or about August 14, 2007, approximately two weeks after Shipman's resignation, Bingham tendered his resignation from JLT. Per the terms of his employment agreement, Bingham

1 provided twelve months notice and stated that his resignation would be effective August 13, 2007. Bingham's resignation notice also stated that he recognized he had many contractual obligations to JLT and that he intended to comply with them.

36. JLT is informed and believes that at the time that he submitted his resignation notice, Bingham had already accepted employment with Marsh and had no intention of complying with his contractual or other obligations to JLT.

37. In August and September 2007, following Shipman's abrupt resignation from JLT, multiple JLT clients transferred their business from JLT to Marsh. These clients included, without limitation, Skywest, Alaska Central Express, Hageland, Security Aviation, Eric Christensen, T-34B, and Diamond Flying. Measured by its annual revenue to JLT, Skywest was the single largest account within the book of business that JLT purchased from Bingham, and was one of the accounts that Bingham and Shipman were responsible for servicing while employed by JLT.

38. By letter dated September 17, 2007, counsel for JLT instructed Shipman to cease and desist her unfairly competitive activities.

39. On September 18, 2007, Bingham advised JLT in writing that, contrary to his initial notice of resignation, he did not wish to comply with his twelve-month notice obligation but rather wished to be relieved of it because it likely was unenforceable.

40. By September 19, 2007, less than seven weeks after Shipman tendered her resignation, thirteen of the fourteen accounts that JLT previously purchased from Bingham and entrusted to Bingham and Shipman had ceased doing business with JLT and, with rare exception, had retained Marsh.

41. By letter dated September 21, 2007, Bingham rescinded his prior notice, asserted that JLT had breached his employment agreement, and claimed that he was not required to given notice or refrain from working with or for Marsh.

42. Within a span of weeks, Shipman appropriated confidential information regarding JLT clients, Shipman and Bingham resigned and accepted employment with Marsh, and all but two of the accounts that JLT had previously purchased from Bingham and thereafter entrusted to Bingham and Shipman for JLT's sole and exclusive benefit, transferred to Marsh.

43.     JLT is informed and believes that through unlawful means, Shipman and Bingham have unilaterally diverted without any compensation to JLT nearly the entire book of business that JLT previously purchased from Bingham for consideration valued in excess of $3 million.

44.     Shipman's conduct was and is in furtherance of a scheme to obtain and convert to her personal use and gain, and that of Bingham, the Confidential Information of JLT, and the goodwill generated, directly and indirectly, by her association with JLT, and to do so by means of, <u>inter alia</u>, solicitation of JLT clients that Shipman serviced with while in the employ of JLT.

45.     Based on information and belief, Shipman continues to benefit from her unlawful conduct. More specifically, on information and belief, she continues to possess JLT Confidential Information, to use JLT's Confidential Information to solicit JLT accounts and to divert the business of JLT customers from JLT to Marsh.

46.     Shipman's unlawful and unfair competition, and her exploitation of JLT's Confidential Information, is a serious and continuing threat to the protectable good will of JLT. If Shipman is allowed to continue her wrongful acts, JLT will suffer further incalculable damages, loss of sales, injury to its reputation, and deterioration of good will.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

47.     JLT re-alleges the foregoing to the extent not inconsistent herewith.

48.     As a condition of her employment, Shipman entered into the Handbook Agreement, which sets forth enforceable contractual obligations to preserve the confidentiality of JLT's confidential and/or proprietary information, to not disclose it to any third party without JLT's prior knowledge and approval, and to otherwise use it for JLT's sole and exclusive benefit.

49.     JLT has performed each and every condition required to be performed by it pursuant to the Agreement with Shipman.

50.     By misappropriating JLT's Confidential Information and using it to divert JLT clients to Marsh, Shipman breached her contractual obligations under the Agreement.

51.     As a result of Shipman's breach of her contractual obligations under the Agreement, JLT has been damaged in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY OF LOYALTY

52. JLT re-alleges the foregoing to the extent not inconsistent herewith.

53. As a Senior Vice President, Shipman was employed by JLT in a position of trust and confidence and she was under a common law duty of loyalty which required her to act solely for the benefit of JLT and not contrary to JLT's interests with respect to all matters connected with her employment relationship.

54. By misappropriating JLT's Confidential Information, diverting JLT clients to Marsh, and other acts, Shipman has breached her common law duty of loyalty to JLT.

55. As a proximate result of Shipman's breach of her common law duty of loyalty, Shipman has harmed JLT in an amount to be proved at trial.

56. JLT is informed and believes, and thereon alleges, that in committing the acts described herein, Shipman is guilty of malice and oppression, thereby warranting an award of punitive or exemplary damages.

## THIRD CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

57. JLT re-alleges the foregoing to the extent not inconsistent herewith.

58. By operation of law, the Agreement that Shipman signed as a condition to her hire by JLT includes an implied covenant of good faith and fair dealing that obligated Shipmen to perform the terms of the Agreement fairly and in good faith and to refrain from doing any act that would deprive JLT of the benefits of the contract.

59. By misappropriating JLT's Confidential Information, making false and/or disparaging statements about JLT, and diverting JLT clients to Marsh, Shipman has breached the implied covenant of good faith and fair dealing.

60. As a proximate result of Shipman's breach of the implied covenant of good faith and fair dealing, Shipman has deprived JLT of the benefit of its bargain and harmed JLT in an amount to be proved at trial.

///

# FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

61. JLT re-alleges the foregoing to the extent not inconsistent herewith.

62. JLT had existing economic and/or contractual relationships with customers that had the probability of future economic benefit to JLT, including without limitation the relationships with the fourteen clients that it purchased from Bingham and entrusted to Shipman and Bingham.

63. JLT is informed and believes, and thereon alleges, that Shipman had knowledge of the relationships alleged in paragraph 62.

64. JLT is informed and believes, and thereon alleges, that Shipman has engaged in intentional and wrongful acts which were designed to disrupt JLT's economic and/or contractual relationships with its customers, including without limitation misappropriating JLT's Confidential Information, making false and/or disparaging statements about JLT, and diverting JLT clients to Marsh.

65. The intentional and wrongful acts of Shipman did, in fact, disrupt JLT's relationships with its customers.

66. As a result of Shipman's intentional and wrongful acts, JLT has been damaged in an amount according to proof.

67. JLT is informed and believes that in committing the acts described herein, Shipman is guilty of malice and oppression, thereby warranting an award of punitive or exemplary damages.

# FIFTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACT

68. JLT re-alleges the foregoing to the extent not inconsistent herewith.

69. JLT and Bingham were parties to an enforceable contract that obligated Bingham, among other things, (a) to preserve JLT's confidential information, (b) to provide 12 months' notice of his intent to resign from employment with JLT, (c) to refrain, for a period of 12 months from the termination of his employment with JLT, from seeking to procure orders from or the business of any person, firm, or company who was a client or prospective client of JLT at any time during the preceding 12 months, and (d) to refrain, for a period of 12 months from the termination of his

1  employment with JLT, from doing business with any person, firm, or company who was a client or
2  prospective client of JLT at any time during the preceding 12 months.
3      70.    JLT is informed and believes that Shipman knew of the agreement between Bingham
4  and JLT.
5      71.    JLT is informed and believes that Shipman intended to induce and did induce
6  Bingham to breach the terms of his employment agreement with JLT.
7      72.    As a result of Shipman's conduct, JLT has been damaged in an amount according to
8  proof.
9      73.    JLT is informed and believes that in committing the acts described herein, Shipman is
10 guilty of malice and oppression, thereby warranting an award of punitive or exemplary damages.

## SIXTH CAUSE OF ACTION

## BREACH OF CONFIDENTIAL RELATIONSHIP

13     74.    JLT re-alleges the foregoing to the extent not inconsistent herewith.
14     75.    As a result of the trust, confidence, and responsibility JLT placed in Shipman by virtue
15 of her position, JLT made Shipman aware that it would disclose to Shipman, and JLT in fact did
16 disclose to Shipman, confidential information relating to JLT's business.
17     76.    JLT is informed and believes that Shipman violated her duty to protect the
18 confidentiality of JLT's confidential information, and Shipman has used JLT's confidential
19 information to divert JLT clients to Marsh.
20     77.    As a result of Shipman's conduct, JLT has been damaged in an amount according to
21 proof.
22     78.    JLT is informed and believes that in committing the acts described herein, Shipman is
23 guilty of malice and oppression, thereby warranting an award of punitive or exemplary damages.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT [18 U.S.C. §1030]

26     79.    JLT re-alleges the foregoing to the extent not inconsistent herewith.
27     80.    On or about July 17, 2007, while still employed by JLT and telecommuting from her
28 residence in California, Shipman, on her own and/or acting as an agent of Bingham and/or Marsh,

1  accessed JLT's Seattle, Washington computer network and obtained confidential and proprietary
2  information belonging to JLT, electronically diverting this information to her personal electronic mail
3  address for the purpose of using the information for other than JLT's benefit. Shipman's obtaining
4  and using such information for purposes other than JLT's benefit was without JLT's authorization
5  and/or exceeded JLT's authorization, and was in violation of the Computer Fraud And Abuse Act,
6  18 U.S.C. § 1030.

7      81.    Shipman's actions were intentional, without JLT's knowledge or permission, and
8  without JLT's authorization or in excess of its authorization.

9      82.    As a proximate result of this violation of the Computer Fraud and Abuse Act, JLT has
10  suffered damage and loss in excess of $5,000, including, but not limited to its costs to respond to the
11  offense, and the benefits Shipman, Bingham and/or Marsh have received as a result of this violation,
12  in an amount to be determined according to proof at trial.

### EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA PENAL CODE SECTION 502

15      83.    JLT re-alleges the foregoing to the extent not inconsistent herewith.

16      84.    Shipman's conduct, as set forth above in paragraphs 28 and 29 violated California
17  Penal Code § 502, in that she knowingly accessed and without permission, altered, damaged, deleted,
18  destroyed, or otherwise used data stored on JLT's computers, computer systems and/or computer
19  networks in order to devise or execute any scheme or artifice to defraud and/or deceive and/or
20  wrongfully control or obtain money, property and/or data.

21      85.    Shipman's conduct, as set forth above in paragraphs 28 and 29, violated California
22  Penal Code § 502, in that Shipman knowingly accessed and without permission copied and/or made
23  use of data from JLT's computers, computer systems and/or computer networks.

24      86.    Shipman's conduct, as set forth above in paragraphs 28 and 29, violated California
25  Penal Code § 502, in that she knowingly and without permission used or caused to be used JLT's
26  computers, computer systems and/or computer networks.

87. Shipman's conduct, as set forth above in paragraphs 28 and 29, violated California Penal Code § 502, in that she knowingly and without permission accessed JLT's computers, computer systems and/or computer networks.

88. Shipman's actions, as set forth above in paragraphs 28 and 29 were outside the scope of her lawful employment with JLT, as they were not reasonably necessary to the performance of her work assignment, in that her actions were conducted for other than JLT's benefit.

89. As a direct and proximate result of Shipman's conduct, JLT suffered and continues to suffer damages, including loss of revenue and profits, as well as costs to determine whether data was accessed, copied, damaged or destroyed, such amount to be determined according to proof at trial.

## NINTH CAUSE OF ACTION

## UNFAIR COMPETITION [CAL. BUS. AND PROF. CODE §§17200, et seq.]

90. JLT re-alleges the foregoing to the extent not inconsistent herewith.

91. By engaging in the conduct and practices set forth herein, Shipman has committed, and continues to commit, acts of unfair competition in violation of California Business and Professions Code §§ 17200, et seq. ("Sections 17200").

92. JLT is informed and believes, and thereon alleges, that the acts of Shipman violate Section 17200 in the following respects:

(a) Shipman's breaches of her confidential relationship with JLT and her breach of her duty of loyalty to JLT, together with her use of JLT's Confidential Information constitute an unfair business practice or act within the meaning of Section 17200.

(b) Shipman's breach of her contract with JLT, and her breach of the implied covenant of good faith and fair dealing constitute unfair business practices within the meaning of Section 17200.

(c) Shipman's acts of interfering with JLT's relationships with its customers and her acts of interfering with and inducing Bingham to breach his employment agreement with JLT constitute unfair business practices within the meaning of Section 17200.

(d) Shipman's violation of the Computer Fraud And Abuse Act and California Penal Code Section 502 constitute unfair business practices within the meaning of Section 17200.

93. By virtue of her past and continuing violations of Section 17200, Shipman has unfairly and unlawfully misappropriated revenue and profit that JLT would have earned but for the conduct of Shipman and JLT has been damaged in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, JLT requests the following relief:

94. That an order be entered preliminarily and permanently enjoining Shipman, through July 30, 2008 (one year from her date of her resignation), from: engaging in the aviation insurance and reinsurance business with Skywest, Inc., Hageland Aviation Services, 40 Foxtrot LLC, T34B LLC, Alaska Central Express, Inc, Alpine Aviation, Inc., Eric Christensen, GJR Leasing, Inc., Peninsula Airways, Inc., Reebaire Aircraft, Inc., Regional Paramedic Services, Security Aviation, Inc., Diamond Flying, LLC, and Fly 4 you, Inc., as an employee, partner, proprietor or otherwise;

95. That an order be entered preliminarily and permanently enjoining Shipman from, directly or indirectly, alone or with others, using or disclosing to any person or entity any information, trade secret, secret or confidential matter relating to the products, programs, sales, customers, customer lists, financial data, policies and methods of JLT, which is not generally known to the public, including any such material developed by Shipman while employed by JLT;

96. That an order be entered directing Shipman to immediately obtain and return to JLT, and not retain for her or other's use, any and all notes, memoranda and other documents relating to the products, programs, sales, customers, customer lists, financial data, and policies of JLT, and any other material and copies thereof relating to Shipman's work with or for JLT or its products, projects, programs or business of which she had knowledge during the term of her employment with JLT;

97. That judgment be entered declaring that the Agreement is valid and enforceable by JLT against Shipman;

98. That JLT recover its damages in an amount to be proved at trial;

99. That JLT recover prejudgment and post-judgment interest as provided by law;

100. That JLT recover attorneys' fees pursuant to California Penal Code § 502(e)(1);

101. That JLT recover its costs and disbursements herein;

102. That JLT be granted permission to amend the Complaint to conform to the proof offered at trial;

103. That JLT be awarded punitive or exemplary damages; and

104. That JLT receive such further relief as the Court deems appropriate.

Dated: March 19, 2008.

COOK │ ROOS │ WILBUR │ THOMPSON LLP

By _____/s/ Susan H. Roos_____
SUSAN H. ROOS
Attorneys for Plaintiff
JLT AEROSPACE (NORTH AMERICA), INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: March 19, 2008.

COOK │ ROOS │ WILBUR │ THOMPSON LLP

By _____/s/ Susan H. Roos_____
SUSAN H. ROOS
Attorneys for Plaintiff
JLT AEROSPACE (NORTH AMERICA), INC.

P031808 khsFAC.doc