1  COOK │ ROOS │ WILBUR │ THOMPSON LLP
   SUSAN H. ROOS, CBN 107278
2  MICHAEL E. WILBUR, CBN 152361
   KRISTINA H. SHUTE, CBN 221439
3  221 Main Street, Suite 1600
   San Francisco, California 94105
4  Telephone:   415-362-7071
   Facsimile:   415-362-7073
5
   Attorneys for Plaintiff
6  JLT AEROSPACE (NORTH AMERICA), INC.

7  BINGHAM MCCUTCHEN LLP
   ROBERT A. LEWIS, CBN 83630
8  ALAN R. BERKOWTIZ, CBN 50112
   HODDY POTTER, CBN 238507
9  Three Embarcadero Center
   San Francisco, CA 94111-4067
10 Telephone:   415-393-2000
   Facsimile:   415-393-2286
11
   Attorneys for Defendant
12 CLAUDIA SHIPMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JLT AEROSPACE (NORTH AMERICA), INC., a corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CLAUDIA ROCKSETH-SHIPMAN, an individual,<br><br>　　　　　　　Defendant. | Case No.: C 07 5099 JSW<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER** |

The parties to the above-entitled action, Plaintiff JLT Aerospace (North America), Inc. ("JLT") and Defendant Claudia Shipman ("Shipman"), jointly submit this Case Management Statement and Proposed Order.

1. <u>Jurisdiction and Service.</u>

The basis for the Court's subject matter jurisdiction over JLT's claims in this action is 28 U.S.C. § 1332. This action is an action between citizens of different states (JLT is incorporated in the State of Delaware and has its principal place of business in the State of Virginia, and Shipman resides in the State of California) and the matter in controversy exclusive of costs and interest, exceeds $75,000. Shipman does not question personal jurisdiction, venue, or service. Shipman intends to plead one or more counterclaims following the Court's resolution of Shipman's partial motion to dismiss, *see* Fed. R. Civ. Proc. 12(a)(4), at which point Shipman will serve JLT and possibly one or more individuals employed by Plaintiff in accordance with Federal Rules.

2. <u>Facts.</u>

   a. A brief chronology of the facts:

   **I.    Plaintiff's Position**

From June 6, 2004 through on or about July 30, 2007, Shipman was employed by JLT as Senior Vice President. Shipman became employed by JLT as part of a business transaction between JLT and one of Shipman's longtime business colleagues, Donald Bingham ("Bingham"), whereby Bingham sold his entire book of aviation insurance business to JLT for the gross sum of $3,000,000, and JLT agreed to employ Bingham and certain of his former employees, including Shipman. At the time of this transaction, Bingham's book of aviation insurance business was comprised of fourteen accounts: Skywest, Inc., Hageland Aviation Services, 40 Foxtrot LLC, T34B LLC, Alaska Central Express, Inc., Alpine Aviation, Inc., Eric Christensen, GJR Leasing, Inc., Peninsula Airways, Inc., Reebaire Aircraft, Inc., Regional Paramedic Services, Security Aviation, Inc., Diamond Flying, LLC, and Fly 4 you, Inc. After JLT hired Shipman, she worked out of JLT's Seattle Office, and was responsible for the day-to-day service, management and growth of these accounts.

In or about August 2006, Shipman moved to California, and JLT permitted her to telecommute to the Seattle office. As a condition of her continued employment with JLT, in January

1  2007, Shipman executed an Employee Handbook Acknowledgement, stating that she agreed to
2  comply with the policies, rules, guidelines and procedures contained in the Employee Handbook.
3  JLT's Employee Handbook includes policies that identify information regarding JLT customers as
4  confidential and proprietary, and that require the protection of such information from improper use
5  and disclosure.  JLT's Employee Handbook also includes policies and rules of conduct regarding
6  conflicts of interest.

7       On July 25, 2007, JLT notified Shipman it would be terminating her employment, and
8  provided her with the opportunity to transition to a consulting relationship with JLT.  On or about
9  July 30, 2007, Shipman resigned from her employment with JLT, and commenced employment with
10 one of JLT's competitor's Marsh USA, Inc. ("Marsh").  Several weeks after Shipman resigned from
11 JLT and began working for Marsh, Bingham did the same.  By September 2007, twelve of the
12 fourteen aviation insurance accounts that JLT had purchased from Bingham when it hired Bingham
13 and Shipman had transferred their business from JLT to Marsh.

14      JLT alleges that while employed by JLT,  Shipman had access to confidential information
15 belonging to JLT pertaining to JLT's services, products and customers.  JLT further alleges that while
16 still employed by JLT, Shipman accessed JLT electronic records containing confidential customer
17 information, sent such records to her personal electronic mail address, and then attempted to cover
18 her appropriation of this confidential information by deleting the corresponding electronic mail
19 traffic.  JLT also alleges that in June or July 2007, while still employed by JLT, Shipman began
20 negotiating for employment with Marsh, and solicited, encouraged, or otherwise influenced JLT
21 customers to move their business from JLT to Marsh.  JLT further alleges that Shipman disclosed
22 JLT's confidential information to Marsh for the purpose of diverting JLT customers to Marsh.  JLT
23 contends that in August 2007, Shipman made untruthful statements to JLT customers for the purpose
24 of diverting their business away from JLT.

25      JLT's Complaint includes seven causes of action against Shipman:  (1) breach of contract; (2)
26 breach of fiduciary duty of loyalty; (3) breach of the covenant of good faith and fair dealing;
27 (4) intentional interference with prospective economic advantage; (5) intentional interference with
28 contract; (6) breach of confidential relationship; and (7) unfair competition.

## II.  Defendant's Position

JLT hired Ms. Shipman on June 6, 2004 in conjunction with its hiring of Mr. Donald Bingham. Both had been employed by broker Heath Lambert. While JLT required a written contract from Mr. Bingham, it offered no written contract to Ms. Shipman, and her employment was not subject to a written agreement. The client of significance for Ms. Shipman and Mr. Bingham was airline SkyWest, with whom they had worked for many years.

Although JLT hired Ms. Shipman as a senior vice-president in its new Seattle office supervising a staff of four people, its treatment of Ms. Shipman started badly and only deteriorated from there. In her first face-to-face meetings with Scott Arledge and Phil Gingell, two high-level employees from JLT's Virginia office, Ms. Shipman was subjected to blatant sexual harassment. Mr. Arledge and other Virginia executives treated Ms. Shipman as if she did not exist; omitting her from emails and other correspondence and exclusively dealing with Mr. Bingham, despite his opposition. Virginia executives called Ms. Shipman, "the Madame," and referred to her as such in conversations with Mr. Bingham, again despite his opposition. At one point, a complaint was made by Ms. Shipman about her treatment and an investigation was supposedly conducted.

Ms. Shipman was contacted on July 25, 2007 by a JLT employee in London who told her that JLT was terminating her and offering her a consulting relationship with JLT on a temporary basis. Although Ms. Shipman asked then for details of this proposed consulting relationship, no one from JLT ever responded with any specifics about it.

In this same time period, Ms. Shipman was contacted by the aviation department of Marsh USA Inc. ("Marsh"). Additionally, Marsh has had a longstanding relationship with SkyWest dating back to the 1970's, and was the broker for nearly all of SkyWest's insurance other than the one piece that JLT was brokering through Mr. Bingham and Ms. Shipman. Under threat of her pending

termination, Ms. Shipman resigned from JLT on July 30, 2007 and began work with Marsh.[1] Marsh believed that the hiring of Ms. Shipman would allow it a significant competitive opportunity regarding SkyWest. Marsh believed that SkyWest could be convinced to change its broker on the remaining piece of the SkyWest program because of several factors: Marsh's longstanding relationship with SkyWest on its other insurance; Marsh's well-known expertise and size in the aviation market; the fact that it was known generally in the industry that SkyWest was not pleased with JLT for its joint marketing of the SkyWest account with SkyWest's competitor, Mesa Air; and Marsh's employment of Ms. Shipman, who had a close and longstanding relationship with SkyWest. Prior to Ms. Shipman's departure from Marsh, JLT's Virginia executives took control of the placement of insurance for the SkyWest account, and those executives so mishandled the account that SkyWest, according to its Chief Financial Officer, was looking to fire JLT at the first opportunity. Once Ms. Shipman joined Marsh, she and other Marsh employees met with SkyWest and convinced them to change brokers. SkyWest issued a broker of record letter to Marsh on or about August 20, 2007.

Ms. Shipman was free to compete for JLT's clients on behalf of her new employer, Marsh. Shipman, having worked with these clients for more than a decade, was quite capable of convincing them to join her at Marsh without competing illegally. JLT's allegations are part of a pattern of mistreating and devaluing Shipman. That pattern began with JLT's failure to offer her a contract, continued with JLT's harassment and denigration of her abilities, culminated in JLT's decision to terminate her, and now persists in this litigation in the form of JLT's stubborn refusal to realize that the clients at issue would rather work for Marsh and Shipman than JLT and its Virginia executives.

---

[1] Following Ms. Shipman's resignation, JLT attempted repeatedly to "crack" into Shipman's cellular phone account records, resulting in an automatic email, sent to Shipman from her cellular account provider, advising her that her account was temporarily locked due to repeated, unsuccessful attempts to access her records. Through these actions, JLT invaded Shipman's right to privacy as protected by the California Constitution.

The principal factual issues which the parties dispute are as follows:

(1) Whether Shipman entered into a contract whereby she agreed to abide by the policies, rules, guidelines and procedures contained in JLT's Employee Handbook.

(2) Whether Shipman breached any duty, contractual or otherwise, she owed to JLT.

(3) Whether Bingham had an enforceable employment contract with JLT.

(4) Whether Shipman had knowledge of the employment contract between Bingham and JLT and the terms of that contract.

(5) Whether Shipman misappropriated JLT's confidential information.

(6) Whether Shipman improperly disclosed JLT's confidential information.

(7) Whether Shipman used JLT's confidential information to divert JLT customers from JLT.

(8) Whether Shipman made false and disparaging statements about JLT.

(9) Whether Shipman, by her actions, disrupted JLT's relationships with any of its customers.

(10) Whether Shipman induced Bingham to breach his employment contract with JLT.

(11) Whether Shipman unfairly competed with JLT.

(12) Whether JLT suffered any damages as a result of any actionable conduct by Shipman.

3. <u>Legal Issues.</u>

(1) Whether Shipman is liable on JLT's breach of contract claim.

(2) Whether Shipman owed JLT a duty of loyalty that would support JLT's claim for breach of fiduciary duty of loyalty.

(3) Whether Shipman is liable on JLT's claim for breach of the covenant of good faith and fair dealing.

  (4) Whether evidence can support a finding that Shipman committed an underlying wrongful act sufficient to support JLT's claim for intentional interference with prospective economic advantage.

  (5) Whether Shipman is liable on JLT's claim for intentional interference with contract.

  (6) Whether Shipman is liable on JLT's claim for breach of confidential relationship.

  (7) Whether Shipman is liable on JLT's claim for unfair competition.

  (8) Whether JLT is entitled to punitive damages.

4. <u>Motions</u>.

On January 25, 2008, Shipman filed a Motion to Dismiss JLT's First and Third Causes of Action. On March 10, 2008, the court denied Shipman's motion in its entirety. There are no other prior or pending motions at this time. Given the early stage of the proceedings, JLT is unaware of any anticipated motions at this time. Shipman still anticipates bringing a motion for summary judgment after the close of discovery.

5. <u>Amendment of Pleadings.</u>

JLT filed its First Amended Complaint on March 19, 2008, adding claims for violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. §1030 and California Penal Code §502. Shipman filed her response to JLT's First Amended Complaint and counterclaim for retaliation on April 8, 2008. JLT answered Shipman's counterclaim on April 16, 2008.

6. <u>Evidence Preservation.</u>

JLT has undertaken a number of steps to preserve electronic data and documents that may be relevant to this lawsuit. These steps include, without limitation, suspending document/data destruction procedures, collecting and retaining available back-up tapes, collecting and/or copying data maintained on servers and/or other platforms, preserving existing hardware, including laptop and desktop computers, and advising both information systems personnel and potential employee witnesses of the preservation obligation.

JLT AEROSPACE v. ROCKSETH-SHIPMAN, ET AL.  JOINT CASE MANAGEMENT STATEMENT AND
CASE NO. C 07 5099 JSW  PROPOSED ORDER
6
A/72607403.1/2000047-0000328979

1    Shipman has also taken steps to preserve electronic data and documents that may be relevant
2    to this action. On October 18, 2007, fifteen days following the filing of JLT's Complaint, Shipman's
3    current employer, Marsh, instructed Shipman and others believed to possess relevant information to
4    preserve any information relating to JLT's claims and to refrain from deleting, overwriting or
5    otherwise destroying any such information.

6    7.   <u>Disclosures.</u>

7    The parties have served initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of
8    Civil Procedure ("FRCP"). Shipman served her disclosures on March 6, 2008, and JLT served its
9    disclosures on March 7, 2008.

10   8.   <u>Discovery.</u>

11   In addition to the documents produced in response to mutual, informal discovery in the related
12   action in the United States District Court, Western District of Washington at Seattle, case number 07-
13   1560 RAJ, captioned *JLT Aerospace (North America), Inc. v. Donald Bingham*, Shipman sent a set of
14   written discovery to JLT to which JLT responded on May 30, 2008. Most of the responsive
15   documents have already been produced in the related action, but JLT will be producing some
16   additional documents shortly. The parties expect to propound additional written discovery in the near
17   future. In the related action, further formal written discovery has taken place and the parties have
18   produced additional documents.

19   Since many of the witnesses are relevant to both cases, the parties have arranged a mutually
20   agreeable deposition schedule applicable to both cases. Depositions are set to begin in the middle of
21   August and continue through the end of October. JLT anticipates taking the deposition of Shipman
22   and Bingham, as well as Marcel Chad and Jerry Frick, two Marsh executives. Shipman anticipates
23   taking the depositions of JLT executives Phil Gingell, Scott Arledge, Charley Engel, Helen Richards,
24   Nigel Weyman, and Alan Griffin. JLT also anticipates taking the deposition of one or two SkyWest
25   witnesses. In addition, both parties may take other depositions as necessary.

26   9.   <u>Class Actions.</u>

27   This action is not a class action.

28

10. <u>Related Cases.</u>

The action entitled <u>JLT Aerospace (North America), Inc. v. Donald Bingham</u>, Case No. 07-1560 RAJ, currently pending in the United States District Court for the Western District of Washington before the Honorable Richard A. Jones is related to this action.

11. <u>Relief.</u>

JLT seeks an order permanently enjoining Shipman from using or disclosing any of JLT's confidential information, and requiring her to obtain and return all such information to JLT. JLT further seeks monetary damages in an amount to be proved at trial, interest as provided by law, costs, and punitive damages.

Shipman is not currently seeking any relief. Should Shipman plead counterclaims in her answer to JLT's complaint, Shipman shall set forth the relief she will seek therein.

12. <u>Settlement and ADR</u>

In addition to the January 18, 2008 mediation in Seattle, Washington in connection with the mediation of the <u>Bingham</u> action, all parties attempted to globally settle both cases at mediation before James Gilliand, Esq. of Townsend, Townsend, and Crew on July 1, 2008. The mediation was unsuccessful.

13. <u>Consent to Magistrate Judge.</u>

The parties do not consent to have a Magistrate Judge conduct all further proceedings in this matter.

14. <u>Other References.</u>

None.

15. <u>Narrowing of Issues.</u>

None at this time. The parties will continue to try to reach agreement regarding narrowing of the issues.

16. <u>Expedited Schedule.</u>

Not Applicable.

1    17.    Scheduling.

2    The Court has ordered the following case schedule:

3    Non-Expert Discovery cut off – November 14, 2008

4    Last Day to hear dispositive motions – January 9, 2009

5    Close of Expert Discovery – March 27, 2009

6    Pretrial Conference – April 6, 2008

7    Trial – April 27, 2009

8    18.    Trial.

9    JLT has demanded a jury trial.  The parties expect that the trial of this matter will last 5 to 10
10   court days.

11        19.    Disclosure of Non-party Interested Entities or Persons.

12   Pursuant to Civil Local Rule 3-16, JLT certifies that the following listed persons, associations
13   of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have
14   a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a
15   non-financial interest in that subject matter or in a party that could be substantially affected by the
16   outcome of this proceeding:  JLT Holdings, Inc., JIB Overseas Holdings Limited, and JLT Group plc.
17   Pursuant to Civil Local Rule 3-16, Shipman certifies that Marsh USA, Inc. has an interest in
18   the subject matter in controversy or in a party to the proceeding.
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

20. <u>Other Matters.</u>

The parties are not aware of any other matters that may facilitate the just, speedy and inexpensive disposition of this action at this time.

Dated: July 25, 2008                COOK │ ROOS │ WILBUR │ THOMPSON LLP


By _____*/s/ Susan H. Roos*_____
SUSAN H. ROOS
Attorneys for Plaintiff
JLT AEROSPACE (NORTH AMERICA), INC.


BINGHAM MCCUTCHEN LLP


By _____/s/ Robert Lewis_____
ROBERT A. LEWIS
Attorneys for Defendant
CLAUDIA SHIPMAN

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties or ordered to comply with this Order.

Dated: _____, 2008        _____
                                                                  UNITED STATES DISTRICT JUDGE